OPINION
{¶ 1} Defendant, Lamar A. Lenoir, appeals from his convictions for abduction and misdemeanor assault. The victim of both offenses was Latonia Adkins.
 {¶ 2} On October 14, 2002, Adkins, whom Defendant had dated for a month or so, told Defendant she planned to go out with friends. The two were then seated in Adkins' car, which was parked in the driveway at Defendant's mother's home.
 {¶ 3} Defendant became irate and began to hit Adkins on the head and choke her. When Adkins attempted to call 911 for help, Defendant grabbed her cell phone and took her car keys. Adkins bit Defendant's hand. He then pulled Adkins from the car and dragged her up the driveway, threatening to kill her. Adkins screamed for her life.
 {¶ 4} These events were witnessed by a neighbor, Tyshia Johnson. Ms. Johnson called 911. Her call was recorded. The recording included in its background words of a man, not identified, who related that a man had taken a screaming woman behind a nearby house.
 {¶ 5} Defendant dragged Adkins into his mother's house and continued to beat her. Defendant's mother ordered him out of her house. Adkins left and called police.
 {¶ 6} When police arrived, Adkins related what had happened. At trial, the officer with whom Adkins spoke described her as an "emotional wreck" and that her hair was in "total disarray." Adkins testified concerning the events described above. Defendant testified that he didn't strike Adkins; he claimed that she was injured in a fight with another woman. Defendant's mother testified that she saw no beating.
 {¶ 7} Defendant was found guilty of abduction and misdemeanor assault on the jury's verdicts. He was convicted, and filed a timely notice of appeal.
 FIRST ASSIGNMENT OF ERROR {¶ 8} "The lower court committed reversible error in allowing the first 911 call from the neighbors to the police into evidence"
 {¶ 9} Defendant objected to the admission in evidence of the tape of the 911 case to police from Tyshia Johnson. The objection was overruled. Defendant argues that the trial court erred in three respects.
 {¶ 10} First, Defendant argues that the declaration of the unidentified man heard on the tape should have been excluded because the man, not having been identified by the State, was unavailable to Defendant for cross-examination. Defendant relies on State v. McNeal
(2002), Allen App. No. 1-01-158, 2002-Ohio-2981, which held that in that circumstance the prosecution has the burden to establish that the declarant is unavailable before such evidence may be admitted. Otherwise, the accused is deprived of his constitutional right of confrontation.
 {¶ 11} On the tape of her 911 call, Ms. Johnson is heard to say: "It's a man outside my house, right in front of my house, beat up a little girl." (T. 57). She went on to say: "he was beating her up right in front of my house." (T. 58). An unidentified male voice is then heard to say: "He took her behind the house . . ." Ms. Johnson then states: "He done took her behind the house. They ain't even in the car no more. They behind the house or something." (T. 61).
 {¶ 12} Defendant failed to object at trial to admission of the evidence on these grounds. Therefore, any error is waived. Cooper v. Cityof Dayton (1997), 120 Ohio App.3d 34. We nevertheless review on a plain error standard. State v. Wickline (1990), 50 Ohio St.3d 114. Plain error does not exist unless it can be said that, but for the error, the outcome of the trial clearly would have been otherwise. State v. Long (1978),53 Ohio St.3d 91.
 {¶ 13} We do not necessarily subscribe to the rule announced inMcNeal. It analogized the issue presented to the requirements of Evid.R. 807 concerning out-of-court statements by a child-victim in a sex-abuse case who is not competent to testify and, therefore, "unavailable," permitting another to recite the child's words. In this circumstance, the declarant's own words are preserved on tape. Even were we to agree withMcNeal, we could not find plain error here. Other, substantial evidence corroborates what the unidentified male is heard to say.
 {¶ 14} Defendant's second contention under this assignment is that the trial court abused its discretion when it admitted evidence of Ms. Johnson's words heard on the tape as a present sense impression, which per Evid.R. 803(1) is not subject to the rule against hearsay. The exception requires the declarant to have perceived the event, and Ms. Johnson conceded that without her glasses she couldn't see much. Also, some of what she said merely repeated what she heard the unidentified male say had happened.
 {¶ 15} Defendant concedes that "[t]he unknown male caller's comments may have been present sense impression." (Brief, p. 13). His argument is that Ms. Johnson's words can't be, because she lacked the required impression from her senses.
 {¶ 16} However, Ms. Johnson was not wholly unable to sense what she later described. She saw some movements, and it is undisputed that she heard a woman's screams.
 {¶ 17} Hearsay evidence is inherently unreliable because the declarant is not testifying under oath and is not subject to cross-examination. Those are structural defects, which are nevertheless ameliorated by the circumstantial factors of reliability that the recognized exceptions to the rule against hearsay involve.
 {¶ 18} Ms. Johnson was not unavailable; she was, in fact, under oath and was cross-examined by Defendant. Her testimony was the product of her sense impressions. Any weaknesses that resulted from a defect in her senses goes to the probative value and weight of her out-of-court statements, not to their admissibility.
 {¶ 19} Defendant's third and final argument under this assignment of error is that the trial court abused its discretion when it admitted the tape of the 911 call in evidence because, as evidence, it is irrelevant and, even if it is relevant, it should have been excluded because "it's probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A).
 {¶ 20} The evidence on the tape of Ms. Johnson's 911 call has a tendency to make the existence of facts concerning Defendant's beating of Adkins and his abduction of her more probable. Therefore, it was relevant. Evid.R. 401. Though prejudicial to Defendant with respect to his criminal liability, it was not unfairly so. Neither did it confuse the issues or mislead the jury, being the subject of cross-examination that exposed whatever weaknesses the evidence may have had.
 {¶ 21} The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR {¶ 22} "Appellant's conviction should be reversed and remanded because he was denied effective assistance of counsel."
 {¶ 23} Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. Strickland v. Washington
(1984), 466 U.S. 668. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must demonstrate that, were it not for counsel's errors, the result of the trial would have been different. Id., State v. Bradley (1989), 42 Ohio St.3d 136.
 {¶ 24} Defendant argues that his trial counsel was ineffective for two reasons. The first is counsel's failure to file a motion in limine to exclude the tape of the 911 call, or a Crim.R. 12(C) motion to suppress that evidence. The second is that his counsel failed to seek the identity of the unidentified man heard on the tape.
 {¶ 25} Defendant's trial counsel objected to admission of the tape before the jury heard it. His failure to file a motion in limine to the same purpose is immaterial. Further, a Crim.R. 12(C) motion to suppress could not lie because admissibility of the tape could not be determined without a trial of the general issue. Id.
 {¶ 26} Whatever significance the identify of the man heard on the tape may have had is not explained. Presumably, knowledge of his identity would have allowed defense counsel to subpoena him to testify at trial. We can see several good reasons to avoid that. Insofar as anyone knew, the man's testimony could only damage Defendant's case, and a "man who wasn't there" argument could have some prospect of success. It very well could have been a matter of sound trial strategy to not call the unidentified man as a witness. Absent prejudice, which is not shown, failure to call a witness in that circumstance does not deprive a defendant of the effective assistance of counsel. State v. Reese (1982),8 Ohio App.3d 202.
 {¶ 27} The second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR {¶ 28} "The lower court committed reversible error in disallowing appellant the opportunity to fully cross-examine two of the state's key witnesses"
 {¶ 29} The trial court prohibited Defendant from cross-examining Latonia Adkins, the victim, about whether she failed to pay income taxes, about whether she used drugs or trafficked in drugs, and about whether she carried a gun. The court also prohibited Defendant from questioning Adkins concerning her problems as a probationer. The court prohibited Defendant from cross-examining Adkins' friend, Tawana Beavers, concerning Beavers' drug trafficking and potential association with Adkins for that purpose.
 {¶ 30} Cross-examination of a witness is a matter of right, but the "extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court." State v.Green (1993), 66 Ohio St.3d 141, 147 (quoting Alford v. United States
(1931), 282 U.S. 687, 691, 694). The right of cross-examination includes the right to impeach a witness's credibility. Id. Trial judges retain wide latitude "to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall (1986),475 U.S. 673, 679.
 {¶ 31} Adkins had testified that, as a self-employed but unlicensed hairdresser she paid no tax on her income because "[y]ou're not required to file taxes when you do hair." (T. 138-139). Seizing on this remarkable view of the tax code, defense counsel tried to probe further, but the trial court stopped him. We see no abuse of discretion. That subject as well as the others about which defense counsel wished to inquire of Adkins and Beavers were extrinsic to the criminal conduct with which Defendant was charged. They were not "clearly probative of truthfulness or untruthfulness," and were therefore subject to exclusion per Evid.R. 608(B).
 {¶ 32} The third assignment of error is overruled.
 FOURTH ASSIGNMENT OF ERROR {¶ 33} "Appellant's lower court guilty finding was not supported by sufficient probative evidence and appellant's lower court conviction was against the manifest weight of the evidence."
 {¶ 34} "Sufficiency" of the evidence refers to its logical capacity to demonstrate both the criminal conduct and the culpable mental state that the alleged criminal liability requires. The test is whether all or some part of the evidence that was admitted in the trial would, if believed, convince the average mind beyond a reasonable doubt that the defendant is guilty of committing the offense charged. State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "Weight" of the evidence refers to the inclination of the greater amount of the credible evidence presented in a trial to prove the issue established by the verdict that was reached. State v. Thompkins (1997), 78 Ohio St.3d 380. The test is whether that evidence is capable of inducing belief in its truth, and whether those truths preponderate in favor of the verdict according to the applicable burden of proof.
 {¶ 35} The testimony of the alleged victim, Latonia Adkins, if believed, is legally sufficient to prove the offenses of misdemeanor assault and abduction, of which Defendant was convicted.
 {¶ 36} With respect to the weight of the evidence, Adkins' testimony as well as the officer's observations of her when he interviewed Adkins support both convictions. Tyshia Johnson's testimony about what she heard and saw, albeit limited by opportunity, likewise supports conviction. Defendant denied the conduct involved. His principal contentions on appeal concern the testimony of other witnesses, including his mother, though they had a limited opportunity to see some of the events, failed to see them. Another witness corroborated Defendant's claim that Adkins suffered her injuries in a fight with another woman, but the witness's recollections were somewhat contradictory.
 {¶ 37} "Manifest weight" arguments pop up in at least half of the appeals we review from criminal convictions based on a jury's guilty verdict. Many involve factual questions and issues of credibility that only a jury can sort out; certainly, appellate judges aren't well-situated to the task. As a result, the argument is almost invariably rejected.
 {¶ 38} A manifest weight of the evidence argument doesn't offer a second bite at the apple. To find in favor of the claim, there must be some factually consistent and compelling reason to conclude that the jury somehow lost its way and returned a verdict contrary to the probative value of the credible evidence, weighed on the reasonable doubt burden the law imposes. Here, as in almost every case, save a few, that isn't shown.
 {¶ 39} The fourth assignment of error is overruled.
 Conclusion {¶ 40} Having overruled the assignments of error presented for review, we will affirm the judgment from which this appeal was taken.
BROGAN, J. and YOUNG, J., concur.